IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SPRUHA SHAH, | |
| Plaintiff, | Case No. 21-cv-05734 |
| v. | |
| SHIRLEY RYAN ABILITYLAB, | Judge John Robert Blakey |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Spruha Shah, *pro se*, brings claims against her former employer, Defendant Shirley Ryan AbilityLab, pursuant to the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981. [14]. Defendant has moved to dismiss Plaintiff's claims for failure to exhaust administrative remedies and failure to state a claim. [21]. For the reasons stated below, this Court grants in part, and denies in part, Defendant's motion [21].

**I. Factual Allegations[1]**

Plaintiff worked as a flex staff administrative coordinator for Defendant for 10 days from May 17, 2021 until she resigned on May 27, 2021. [14] at 14. Plaintiff filed an initial complaint against Defendant on October 27, 2021 using this district's form Complaint of Employment Discrimination. Her complaint alleged that Defendant discriminated against her on account of her disability, national origin, and race, in violation of the ADA and Title VII of the Civil Rights Act of 1964 by: (1) failing to

---

[1] The Court draws the following facts from Plaintiff's complaint, which it takes as true at this stage. *See Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015).

promote her; (2) failing to reasonably accommodate her disabilities; (3) failing to stop harassment; and (4) retaliating against her for asserting her rights under the ADA and Title VII of the Civil Rights Act of 1964. [1]. In support of these claims, she states:

> I was denied the opportunity to pursue a promotion on Wednesday, May 26th, 2021 and was forced to resign due to a hostile work environment on Thursday, May 27th, 2021. This hostile work environment includes: a failure to accommodate me for my disability, disparate treatment, discriminatory and disparaging comments and behavior, deliberately tampering with technology negatively impact [sic] my work performance, tampering with evidence, retaliation for attempting to engage in the interactive process for accommodations for my disability as well as making internal and external complaints at the company, and ongoing harassment since my departure on May 27th, 2021.

*Id.* at 7.

Because Plaintiff initially sought to proceed *in forma pauperis*, the Court conducted an initial review of her complaint pursuant to 28 U.S.C. §§ 1915(a), (e) and found that her assets rendered her ineligible for pauper status. *See* [9]. The Court also found, based upon the complaint's lack of factual support and Plaintiff's brief ten-day employment period, that Plaintiff failed to state plausible disability, discrimination, or hostile work environment claims. *Id.*

The Court granted Plaintiff leave to amend her complaint, however, which she did. [14]. Her amended complaint, which stands as the operative complaint, includes the same general allegations, but adds that she has experienced continued harassment since resigning, including "death threats that have been directed at my family and I," [14] at 7, and also provides a list of incidents that she claims demonstrate that she "experienced discrimination, harassment and retaliation" while

employed with Defendant. [14] at 8. In particular, she alleges that, on her first day, she overheard someone in the HR office inquire about her position using a "tone" that struck her as "suspicious" and, following that, her background check was delayed. [14] at 8. She also alleges that Defendant initially assigned her to the Inpatient Scheduling Department but then re-assigned her to the Flex Staff Department. *Id*. She also alleges that Defendant held her to different standards than other employees for clocking in and out (although she does not explain how).

Further, she alleges that someone took her training session notes, tampered with the brightness of her computer screen, and delayed her access to a printer, scanner and shared drive, all to "impact her performance." *Id*. She also alleges that she scanned a document but the image disappeared, one of her emails mysteriously ended up in her trash folder, her parking tickets did not accurately reflect the times she entered and left work, and a manager asked her to move her desk to a different location. *Id*. In addition, she alleges that colleagues gave her misleading and inaccurate instructions; behaved unkindly toward her; made comments about her being near their belongings; moved her belongings that she left overnight; and made a "malicious comment" about the smell of her food. *Id*. She further alleges that she "experienced two falls in the cafeteria." *Id*.

Regarding her alleged denial of disability accommodation, she also attaches to her complaint an email string from May 24, 2021 (three days before she resigned) in which she asks a business support manager, Paul Horbenko, for two accommodations

3

for her PTSD, and Mr. Horbenko responds that he forwarded the request to "Sally" since he is "in process of transitioning out of FLEX." [14] at 10–13.

Finally, regarding an alleged promotion denial on May 26, 2021, she alleges that Defendant told her that its policies did not permit her to pursue a promotion, even though one manager had encouraged her to apply and another had signed off on her "transfer form." [14] at 8. She also alleges that she emailed someone about applying for a transfer, and that person sent her a "malicious" email response. *Id.* at 9. She alleges that the combination of these incidents "led to a constructive discharge" on May 27, 2021 when she resigned. *Id.*

Defendant now moves to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff failed to exhaust administrative remedies for any ADA and Title VII claims and that her complaint fails to state plausible claims. [21]. In the alternative, pursuant to Rule 12(f), Defendant asks the Court to strike from the complaint immaterial and impertinent allegations, and those outside the scope of Plaintiff's right-to-sue letter. *Id.*

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court

to draw the reasonable inference" that the defendant committed the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Williamson*, 714 F.3d at 436.

Rule 12(f) permits a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

### III. Analysis

#### A. Failure to Exhaust

Defendants first seek to dismiss Plaintiff's claims based upon her failure to exhaust her administrative remedies. [22] at 6–9.

Before bringing a claim in federal court under the ADA or Title VII, a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC. *Riley v. City of Kokomo*, 909 F.3d 182, 189 (7th Cir. 2018) (ADA); *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (Title VII). The exhaustion requirement aims to give the EEOC and employer notice of an employee's grievances and an opportunity to resolve the dispute. *See Huri v. Office of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 831 (7th Cir. 2015).

The scope of the EEOC charge "limits the scope of subsequent civil proceedings in federal court." *Reynolds v. Tangherlini*, 737 F.3d 1093, 1099 (7th Cir. 2013). The EEOC charge, however, does not need to allege "each and every fact that combines to form the basis of each claim in her complaint." *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). Instead, an EEOC charge satisfies the exhaustion requirement for any claim "like or reasonably related to the allegations of

the charge and growing out of such allegations." *Id.* (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976)); *see also Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011). For claims to qualify as "like or reasonably related" to an EEOC charge, they "must, at a minimum describe the same conduct and implicate the same individuals." *Moore*, 641 F.3d at 257. Whether claims fall within the scope of an EEOC charge is a question of law. *See id.*

As a preliminary point, the complaint alleges claims pursuant to the ADA and Title VII, but it also asserts claims of national origin and racial discrimination under 42 U.S.C. § 1981. *See* [14] at 4. Although Plaintiff must exhaust administrative remedies as to her ADA and Title VII claims, she need not exhaust claims under § 1981. *See Tyson v. Gannett Co., Inc.*, 538 F.3d 781, 783 (7th Cir. 2008 (holding that "filing of a discrimination charge is not a prerequisite to pursuing" a § 1981 claim in court). Therefore, the Court considers exhaustion with respect to Plaintiff's ADA and Title VII claims only.

Plaintiff alleges that Defendant violated the ADA and Title VII because it: (1) failed to provide her with reasonable accommodations for her PTSD; (2) failed to promote her; (3) failed to stop harassment; and (4) retaliated against her. [14] at 4. In turn, Plaintiff filed two charges with the EEOC—one on August 10, 2021 before filing her initial complaint, and one on November 11, 2021 before filing her amended complaint—both of which she attached to the operative complaint. [14].

6

Her first EEOC charge checked the boxes for discrimination based upon race, national origin, disability, and retaliation. [14] at 14. In support, she stated in her EEOC Charge:

> I began my employment with Respondent on or about May 17, 2021. My most recent position was Flex Staff Coordinator. I have a disability, of which Respondent is aware, and I requested a reasonable accommodation. Respondent failed to provide me with a reasonable accommodation. Respondent also subjected me to harassment. I complained to Respondent. Subsequently, Respondent failed to promote me and constructively discharged me on or about May 27, 2021.
>
> I believe I have been discriminated against because of my race, Asian, and national origin, Indian, in violation of the Title of the Civil Rights Act of 1964, as amended.
>
> I also believe I have been discriminated against because of my disability, and in retaliation for engaging in a protected activity, in violation Americans with Disabilities Act of 1990, as amended.

[14] at 14.

Her second EEOC charge again checked the boxes for discrimination based upon race, national origin, disability, and retaliation but also checked discrimination based upon sex, religion, and genetic information. *Id.* at 17. She also indicated that the discrimination was "ongoing," and where the form instructed her to describe the alleged acts of discrimination, she listed instances of alleged *post-employment* harassment. *Id.* at 17, 19. Namely, she wrote that, after she resigned, Defendant sent her and her family death threats; followed her; communicated with her doctors to impact her medical care; monitored and tampered with her "technology" and with "evidence"; tampered with and delayed her mail; tampered with her food at

7

restaurants; stole her property; and tried to keep her from hiring an attorney. *Id*. at 19.

Defendant argues that neither of Plaintiff's EEOC charges satisfies her exhaustion requirements for either her Title VII or ADA claims because the charges include only "general, vague, and conclusory" allegations. [22] at 6. Plaintiff, who filed a brief and non-substantive *pro se* response, disagrees. [26] at 1.

This Court finds that: Plaintiff's initial EEOC charge, although brief, satisfies the exhaustion requirement with respect to her ADA accommodation and ADA retaliation claim; her second EEOC charge satisfies the exhaustion requirement for her Title VII claims based upon alleged post-employment harassment;[2] but neither EEOC charge satisfies the exhaustion requirement for her Title VII claims for anything she experienced while employed with Defendant.

With respect to the ADA accommodation claim, Plaintiff's first EEOC charge alleges that: (1) she has a disability; (2) Defendant knew about it; (3) she requested an accommodation; (4) Defendant failed to provide that accommodation; and (5) after she requested her accommodation, Defendant retaliated against her by harassing her and refusing to promote her. [14] at 14. Although the EEOC charge does not state the dates she made the request, she only worked for Defendant for ten days. These allegations satisfy exhaustion requirements with respect to her ADA claims.

Neither of her EEOC charges satisfies her exhaustion requirement with respect to a Title VII discrimination or retaliation claim, however, at least based upon

---

[2] The Court considers below whether the alleged post-employment conduct may plausibly support a Title VI claim.

8

anything that occurred during her ten-day employment. The Seventh Circuit has repeatedly held that "while technicalities are particularly inappropriate in a statutory scheme like Title VII in which laymen, unassisted by trained lawyers, initiate the process, the requirement of some specificity in an EEOC charge is not a mere technicality." *Reynolds*, 737 F.3d at 1100 (quoting *Cheek*, 31 F.3d at 501)). A "brief and very general" EEOC charge cannot sustain subsequent claims for "*any* related conduct that took place in connection" with Plaintiff's employment. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992) (emphasis added).

Here, although Plaintiff checked boxes in her EEOC charges for discrimination and retaliation based upon race and national origin, she includes no facts or information about how or when she suffered such alleged discrimination or retaliation during her brief employment with Defendant. Her first EEOC charge summarily states that "Respondent also subjected me to harassment," [14] at 14, but provides no facts regarding alleged harassment other than alleged denial of an ADA accommodation and retaliation based upon her accommodation request. Her second EEOC charge adds facts, but those relate to harassment she allegedly suffered *after* she quit on May 27, 2021. These post-employment allegations do not relate to her complaint's allegations about issues she had while employed (*e.g.*, issues with technology and parking validation, snide comments, different clock-in standards). Nor do they relate to conduct that took place "in connection" with her employment. *Rush*, 966 F.2d at 1110.

Accordingly, the Court dismisses Plaintiff's Title VII discrimination and retaliation claims based upon any alleged conduct during her brief employment because she failed to exhaust her administrative remedies.

### B. Failure to State a Claim

The Court next considers the sufficiency of Plaintiff's allegations as to the exhausted claims (the ADA accommodation and retaliation claim and the Title VII claim based upon post-employment conduct only) and as to Plaintiff's § 1981 discrimination claim, which has no exhaustion requirement. Defendant argues that Plaintiff has failed to plausibly allege any of these claims.

#### 1. ADA—Failure to Accommodate

To establish an ADA failure to accommodate claim, Plaintiff must show: (1) she "was a qualified individual with a disability"; (2) Defendant "was aware of her disability"; and (3) Defendant "failed to reasonably accommodate her disability." *E.E.O.C. v. AutoZone, Inc.*, 809 F.3d 916, 919 (7th Cir. 2016).

Plaintiff alleges that she has PTSD, she disclosed her PTSD to Defendant on May 24, 2021, Defendant failed to accommodate her, and because of this (among other things), she resigned on May 27, 2021. [15] at 7. She attaches to her Complaint an email chain confirming that she disclosed her PTSD to a Business Support Manager, Mr. Horbenko, and asked for an accommodation on May 24, 2021. [14] at 10.

The Complaint's allegations and this email do not plausibly suggest that Defendant "failed to reasonably accommodate" Plaintiff's disability. The Complaint does not allege that anyone refused to accommodate her, just that they failed to do so. True, an "unreasonable delay in providing an accommodation for an employee's

known disability can amount to a failure to accommodate" a disability, *McCray v. Wilkie*, 966 F.3d 616, 621 (7th Cir. 2020). But the Complaint alleges that she quit three days after she requested the accommodation. Further, the email she attaches shows that Mr. Horbenko responded to the email within minutes and passed the request along to another manager for review. *Id.* A few days cannot plausibly qualify as an "unreasonable delay." Plaintiff's allegations—that she requested an accommodation, which her manager reasonably forwarded to his successor, and then quit three days later—cannot support a claim for failure to reasonably accommodate Plaintiff's alleged PTSD disability. Accordingly, the Court finds that Plaintiff has failed to allege a plausible ADA failure to accommodate claim.

### 2. ADA Retaliation

The ADA also bars retaliation for seeking an ADA accommodation. 42 U.S.C. § 12203(a). To allege a plausible ADA retaliation claim, Plaintiff must allege that: (1) she requested an ADA accommodation; (2) she suffered an adverse employment action; and (3) Defendant took the adverse employment action because she requested an ADA accommodation. *Guzman v. Brown Cnty.*, 884 F.3d 633, 642 (7th Cir. 2018); *Rowlands v. UPS*, 901 F.3d 792, 801 (7th Cir. 2018). An "adverse employment action" means an action "that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Levis v. Ill. Cent. RR Co.*, 39 F.4th 903, 911–12 (7th Cir. 2022) (quoting *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016)).

Here, the Complaint plausibly alleges these elements at this stage of the proceedings. Namely, it alleges that Plaintiff requested an accommodation on May 24, 2021 and, in retaliation "for attempting to engage in the interactive process for accommodations for my disability," she "was denied the opportunity to pursue a promotion on Wednesday, May 26, 2021." [14] at 7. Although it seems unusual that an employee who had worked for an employer for just a few days would seek a promotion, the allegation remains colorable since she alleges that she started in a "Flex Staff" position and the promotion she sought was "to be placed in permanent positions." *Id.* at 8–9. Discovery will prove whether Plaintiff can actually support this claim with any evidence. But, for now, Plaintiff has alleged a plausible ADA retaliation claim.

### 3. Title VII Post-Employment Discrimination or Retaliation

As discussed above, the Complaint alleges that Defendant continues to harass and retaliate against Plaintiff since she resigned on May 27, 2021, including through "death threats that have been directed at my family and I." [14] at 7.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or to otherwise discriminate against an individual" based upon that "individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Although a plaintiff can bring a Title VII discrimination claim against an employer for failing to hire the plaintiff or for discrimination while employed, nothing suggests that a plaintiff can bring a claim for alleged discrimination suffered *after* the plaintiff stopped working for the employer. Thus, even if, as Plaintiff alleges, Defendant harassed her on account of a protected

12

characteristic *after* she resigned, the allegation does not suggest Title VII discrimination.

Plaintiff's allegation could, in theory, suggest post-employment Title VII *retaliation*, however. The Seventh Circuit holds that a former employee may maintain a Title VII retaliation claim based upon post-employment conduct "insofar as they are complaining of retaliation that impinges on their future employment prospects or otherwise has a nexus to employment." *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 891 (7th Cir. 1996); *see also Robinson v. Shell Oil Co*, 519 U.S. 337, 346 (1997) (holding that the term "employee" under Title VII covers former employees who are retaliated against by former employers). As the court explained in *Veprinsky*, "the ability to 'blacklist' a former employee, and thus foreclose future employment possibilities is but one example of an employer's power to punish a former employee for exercise of her Title VII rights." 87 F.3d at 890. But the Complaint here offers nothing to suggest that the alleged post-employment "death threats" have impinged upon Plaintiff's "future employment prospects."[3] Accordingly, Plaintiff has not alleged a plausible Title VII retaliation claim based upon any alleged post-employment conduct.

---

[3] As discussed above, Plaintiff's second EEOC Charge provides other examples of alleged post-employment discrimination besides purported "death threats," but she does not include these examples in the Compliant, itself. Even if she had, however, this would not change the Court's analysis of her alleged Title VII post-employment discrimination theory because her second EEOC Charge only alleges attempts to interfere with her medical care and ability to seek legal counsel, harm to her body and health, and "obstruct justice." [14] at 19. None of these plausibly suggest interference in future employment.

### B. Section 1981 Discrimination

Finally, Plaintiff also alleges national origin and race discrimination under 42 U.S.C. § 1981. [14] ¶¶ 9, 12. To allege a plausible § 1981 discrimination claim in the employment context, "a plaintiff must show that he is a member of a class protected by the statute, that he has been the subject of some form of adverse employment action (or that he has been subjected to a hostile work environment), and that the employer took this adverse action on account of the plaintiff's membership in the protected class." *Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013).

Plaintiff alleges that Defendant discriminated against her by subjecting her to a hostile work environment and that she "was forced to resign due to" this hostile work environment. [14] at 7. In other words, she alleges "constructive discharge."

To allege a plausible hostile work environment claim, the environment must be "both subjectively and objectively offensive," and the conduct constituting the hostile environment must be "severe or pervasive." *Poullard*, 829 F.3d at 859. Further, to plausibly allege "constructive discharge," the working conditions must be "even more egregious than that required for a hostile work environment claim because employees are generally expected to remain employed while seeking redress, thereby allowing an employer to address a situation before it causes the employee to quit." *Wright v. Ill. Dep't of Children & Fam. Servs.*, 798 F.3d 513, 527 (7th Cir. 2015).

Plaintiff has not alleged either a plausible hostile work environment claim or constructive discharge. Instead, many of her examples suggest, at most, routine

14

annoyances at any new job—a scanner that does not work, problems accessing a shared drive, lost notes, confusing instructions, a slower-than-expected background check. [14] at 9. Other examples suggest, at most, petty grievances or minor slights by colleagues—for example, someone behaved "unkindly," someone moved her belongings to a different desk overnight, someone commented about the smell of her food. *Id.* Still other allegations describe experiences having nothing to do with discrimination or mistreatment—her claim, for example, that her "parking tickets did not accurately reflect" when she arrived and departed, and her claim that she tripped in the cafeteria. *Id.* These allegations do not plausibly suggest either objectively offensive or "severe and pervasive" conduct having anything to do with Plaintiff's race or national origin. Nor do these allegations rise to the level of egregious conduct that would plausibly suggest constructive discharge, particularly when Plaintiff's total term of employment lasted just ten days.

Plaintiff also alleges that she suffered an adverse employment action when Defendant refused to promote her. To pursue a § 1981 claim based upon this alleged adverse action, however, Plaintiff would also have to plausibly allege that Defendant "took this adverse action on account of" her "membership in the protected class." *Morgan*, 724 F.3d at 995. And her complaint does not allege that the Defendant refused to promote her on account of her race or national origin. To the contrary, other allegations in her complaint and her EEOC Charges tie the refusal to promote to her ADA accommodation request. [14] at 7, 14. As a result, Plaintiff does not allege a plausible § 1981 discrimination claim.

15

## IV. Conclusion

For the reasons explained above, the Court grants in part and denies in part Defendant's motion to dismiss [21]. The Court dismisses Plaintiff's Title VII discrimination and retaliation claims, her ADA failure to accommodate claim, and her § 1981 discrimination claim. Plaintiff may proceed on an ADA retaliation claim only, and the parties shall file a status report by October 13, 2023 proposing reasonable case management dates, including a fact discovery deadline. If at any time the parties agree that a settlement conference with the assigned Magistrate Judge could be productive, they should call chambers to so advise, and the Court will enter an appropriate referral order.

Dated: September 29, 2023          ENTERED:

_____
John Robert Blakey
United States District Judge